**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **KENNY WIGGINS, ID # 1640401,**           ) | |
|        Petitioner,                                         ) | |
| vs.                                                                  ) | No. 3:13-CV-2418-D (BH) |
|                                                                        ) | |
| **WILLIAM STEPHENS, Director,**            ) | Referred to U.S. Magistrate Judge |
| **Texas Department of Criminal**              ) | |
| **Justice, Correctional Institutions Division,** ) | |
|        Respondent.                                    ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I.   BACKGROUND**

Kenny Wiggins (Petitioner) challenges his conviction for robbery in Cause F09-54476. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

**A.   Factual and Procedural History**

On June 9, 2009, the State indicted Petitioner for the robbery of Harry Baker on or about April 28, 2009, enhanced by two prior felony convictions. (Clerk's Record "C.R.":2-3). He pled not guilty and was tried before a jury in the Criminal District Court No. 3 of Dallas County on April 6-7, 2010. (C.R.:4). The state appellate court recounted the evidence at trial as follows:

> On April 28, 2009, complainant Harry Baker was walking his small dog in the courtyard at apartment complex where he resided. Wiggins approached Baker from behind, reached around Baker, shoved his hands into Baker's pockets, and demanded Baker give him money. Baker told Wiggins he did not have any money with him. Wiggins then struck Baker in the shoulder and neck, kicked Baker's dog, and fled.
>
> Wiggins was prohibited from being on the apartment complex property on April 28, 2009 by a criminal trespass warning he received on April 7, 2009. The

trespass warning was delivered by apartment manager Linda Hill in the presence of Officer S. Barney and the warning indicated that if Wiggins returned to the property, he could be charged with the offense of criminal trespass. Hill saw Wiggins at the apartment complex on the day of the incident. When seen by Hill, Wiggins ran. Shortly after seeing Wiggins, Hill learned about an altercation between Baker and Wiggins.

After his encounter with Wiggins, Baker went to his apartment and called the police. Prior to this incident, Baker had seen Wiggins on the apartment complex property and Wiggins had asked Baker for money. A few days after the incident, Baker identified Wiggins as the perpetrator in a photograph lineup. Wiggins was arrested and charged with robbery.

At trial, Baker and Hill identified Wiggins. Wiggins did not testify in the guilt/innocence phase of the trial. The jury found Wiggins guilty of robbery.

Wiggins pled true to two felony enhancement paragraphs in the indictment. Wiggins signed a stipulation of evidence indicating that if called as a witness for the State, Deputy Hamb of the Dallas County Sheriff's Department would testify that Wiggins was "the same individual who was arrested for, and charged with" fourteen prior offenses. In the stipulation, Wiggins waived the right to confront and cross-examine Deputy Hamb and agreed that the witness's testimony could be read into the record. The stipulation was admitted in evidence at the punishment phase of the trial. Without objection, the State then introduced evidence of the fourteen prior convictions:

- August 16, 1985, two burglaries of buildings and robbery, sentence of eleven years' confinement;

- October 21, 1994, possession of a controlled substance, sentence of two years' confinement and five years' probation, with probation revoked on January 22, 1999;

- July 22, 2003, possession of a dangerous drug, sentence of ninety days' confinement;

- January 30, 2004, theft of property, sentence of thirty days' confinement;

- July 1, 2004, possession of a controlled substance, sentence of two years' confinement and fine of $1500;

- August 23, 2006, prostitution, sentence of sixty days' confinement;

- September 29, 2006, prostitution, sentence of sixty days'

confinement;

• February 12, 2007, possession of a controlled substance, sentence of ninety days' confinement;

• March 23, 2007, possession of controlled substance, sentence of one hundred eighty days' confinement;

• April 3, 2008, robbery, sentence of four years' confinement, four years' probation, and fine of $1000;

• May 15, 2008, possession of controlled substance, sentence of two years' confinement, two years' probation, and fine of $500; and

• April 24, 2009, prostitution, sentence of twenty-four days' confinement.

Markisha Sims, a detention officer with the Dallas County Sheriff's Department, testified at the punishment phase of the trial. Sims identified Wiggins as the inmate she saw assaulting another inmate on July 23, 2009. Wiggins received fifteen days' restriction for that assault, with confinement in a single cell and no television, phone, or commissary privileges.

John Priolo, a community supervision officer employed by the Community Supervision and Corrections Department, testified that Wiggins was placed on four years' probation for the April 2008 robbery conviction and on two years' probation for the May 2008 possession of a controlled substance conviction. Priolo testified that Wiggins was homeless and a heavy drug user. Wiggins was placed in the Judicial Treatment Center, an in-patient six-month drug treatment program. Wiggins did fairly well at the Judicial Treatment Center. He volunteered for over three hundred hours of community service, had a positive attitude, and took his medication voluntarily. However, Wiggins almost immediately absconded after release from the drug treatment program. Overall, Wiggins was a fairly poor probationer, and he did not complete his probation. Wiggins was charged with a felony and a misdemeanor offense after he was released from the judicial treatment program.

Wiggins did not testify at the punishment phase of the trial. His sole witness was his Alcoholic Anonymous volunteer sponsor, Steven Nicholson. Nicholson had known Wiggins for about a year and a half and first met Wiggins when he was at the Judicial Treatment Center. Wiggins lived at a halfway house after release from the judicial treatment program, and Nicholson saw Wiggins a couple of times while he resided at the halfway house. When Wiggins no longer lived at the halfway house, Nicholson lost track of him.

Wiggins contacted Nicholson about a month after he was back in jail

>   following his arrest in this case. Wiggins told Nicholson he was living on the streets, had relapsed into using drugs, and was committing crimes. Nicholson was aware that Wiggins robbed Baker, it was Wiggins's third offense of robbery, and Wiggins did not report to probation as he was supposed to. At the time of trial, Nicholson and Wiggins were speaking at least once a week. They talked about what was going on in Wiggins's life, how Wiggins wanted to better his life, what Wiggins had done in the past that he regretted, and how Wiggins would like to use what he had learned from his experience to help others. Following his arrest in this case, Wiggins communicated in writing with his mother in Georgia, with whom he had not communicated in years. Wiggins attended Bible study while in jail.
>
>   Nicholson did not think Wiggins knew how to survive as a contributing member of society. Nicholson thought Wiggins was "salvageable" and could become a productive citizen with proper training, although Nicholson acknowledged that Wiggins would have to take responsibility for his actions and his choices.
>
>   The jury assessed punishment of ninety-nine years' confinement and a $7500 fine. Wiggins filed this appeal.

*Wiggins v. State*, 2011 WL 3307524, No. 05-10-00467-CR, slip op. at *1-3 (Tex. App.–Dallas, Aug. 3, 2011, pet. ref'd).

On direct appeal, Petitioner alleged that the trial court erred in overruling defense objections during closing statements at the punishment phase of the trial. *Wiggins*, slip op. at *1. Petitioner's conviction was affirmed on direct appeal, after the state court modified the judgment to delete the fine. *Id*. at 8. Petitioner's petition for discretionary review (PDR) was refused on February 1, 2012. *See* PD-1553-11. He did not file a petition for writ of certiorari with the Supreme Court. Petitioner mailed his state habeas application on November 16, 2012, raising the same claims as in his federal petition and others. (State Habeas Transcript "S.H.Tr." at 2-15). The trial court did not make any specific findings with respect to his claims, but issued an order on January 8, 2013, finding no controverted, previously unresolved facts that required an evidentiary hearing, and recommending that the state writ be denied. (S.H.Tr.:55). On February 6, 2013, the Court of Criminal Appeals denied the state writ without a written order. *Id*. at cover.

4

Petitioner mailed his petition for federal habeas relief on June 19, 2013. (Pet. at 10). Respondent filed a response on October 25, 2013, and provided the state court records. Petitioner filed his reply on December 27, 2013.

**B.     Substantive Claims**

Petitioner raises the following claims for relief:

–the jury committed misconduct by discussing parole eligibility during deliberations (ground two);

–the trial court erred by:

> –having *ex parte* communication with the jury during jury deliberations;
>
> –failing to notify the defense about questions from the jury during deliberations or address these questions in open court, on the record;
>
> –failing to permit the jury to hear requested testimony or view requested evidence during deliberations;
>
> –submitting supplemental instructions to the jury during deliberations without notifying the defense or obtaining a defense waiver;
>
> –failing to notify the defense about or address jury misconduct (ground one);

–his trial counsel was ineffective when he failed to allow Petitioner to make the final decision on a plea offer or inform him that it was in his best interest to accept the offer, since he was willing to accept the five-year offer from the State (ground four); and

–his appellate counsel was ineffective when he failed to raise on direct appeal the trial errors and jury misconduct alleged by Petitioner in his state and federal habeas petitions (ground three).

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for

5

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

This Court does not sit in judgment of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

### III. JURY MISCONDUCT

In his second ground for relief, Petitioner asserts that the jury committed misconduct by discussing the length of sentence he would be required to serve. He bases this claim on a jury note asking whether he would be eligible for parole if given a life sentence. (Pet. at 6).

At the punishment phase, the jury received the following instructions about parole law:

> Under the law applicable in this case, the defendant, if sentence to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
> It is also possible that the length of time for which the defendant will be

> imprisoned might be reduced by the award of parole.
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-quarter of the sentence imposed, without consideration of any good conduct time he may earn.
> Eligibility for parole does not guarantee that parole will be granted.
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

(C.R.:31-32). During deliberations, the jury sent a note to the judge asking "[i]f a life sentence is given, will he be eligible for parole? If so, after how many years?" (C.R.:36). In response to this question, the trial judge sent the jurors a note informing them that "you have received all of the law and evidence that you are entitled to receive in this case, and you are instructed to continue with your deliberations."

The jurors were instructed about Texas parole law and that they could consider it in their deliberations. They asked for further clarification from the trial judge, but were not provided any. This is not evidence that the jurors deliberated on any issue that they were instructed not to consider, or that they committed any misconduct. The state habeas court's denial of this claim is not contrary to federal law. This ground for relief is without merit and should be denied.

## IV. TRIAL ERROR

In his second ground for relief, Petitioner asserts that the trial court erred by: (1) conducting *ex parte* communications with the jury during deliberations; (2) failing to notify the defense about questions from the jury during deliberations or address these questions on the record in open court; (3) failing to permit the jury to hear requested testimony or view a requested evidence during

8

deliberations; (4) submitting supplemental instructions to the jury during deliberations without notifying the defense or obtaining a defense waiver; and (5) failing to notify the defense about or address alleged jury misconduct (Pet. at 6, 11). All of these claims are based on jury notes submitted during deliberations at both phases of the trial. (Reply at 8). The Court of Criminal Appeals denied these claims on their merits at the state habeas level. This denial is not contrary to federal law.

As noted earlier, during the punishment phase of the trial, the jury asked when Petitioner would be eligible for parole if given a life sentence, and the trial court gave no additional information. During jury deliberations at the guilt phase, the jury asked whether it could review or consider opening statements, and whether it could review Harry Baker's testimony and the DVD of Baker viewing the photographic line-up. (C.R.:26). The jury later withdrew the request to view the DVD. (C.R.:28). With regard to the opening statements, the trial court instructed the jury that it had received all the law and evidence it was entitled to receive. (C.R.:30). With regard to reviewing Baker's testimony, the trial court instructed the jury that it was not entitled to a general re-reading of testimony, but that Texas statutory law provides that a portion of testimony may be re-read if the jury indicates a specific dispute. (C.R.:29). The jury sent a second note stating that it was in dispute regarding Baker's testimony about Petitioner approaching him, and whether Baker testified that he did not see Petitioner when he first put his hands in Baker's pockets. (C.R.:28).

The handwritten notes from the jury foreperson and the judge's typed and signed responses are part of the trial record. (C.R.:26-28, 39-40). Because the record of the trial has no reference to the notes and responses, Petitioner asserts that the trial court conducted *ex parte* communications with the jury, failed to notify the defense about the questions, submitted supplemental instructions to the jury without notifying the defense or obtaining a defense waiver, failed to permit the jury to view or hear the requested evidence, and failed to inform the defense about alleged jury misconduct.

He presents no evidence beyond his own conclusory allegations. An absence in the reported record of a discussion with counsel about the jury's questions or a re-statement of requested testimony is not evidence that defense counsel was not informed about the questions or that the requested testimony was not re-read to the jury. Conclusory allegations are insufficient to raise a constitutional issue in a federal habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983).

In addition, the trial court followed state law in determining what evidence could be provided to the jury, and Petitioner cites a *federal* criminal procedure rule and cases applying it as his support for his claim that the questions should have been addressed in open court on the record. (Reply at 3-4). Federal habeas proceedings do not afford review of a state court's interpretation of its own law. *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Petitioner has not shown trial error, much less any prejudice. None of the cases cited in his

reply brief support his claims. In *Rogers v. United States*, 422 U.S. 35, 39-40 (1975), the Supreme Court held that a trial court erred by answering a jury question about whether it would accept a guilty verdict "with extreme mercy" without notice to the defendant. It recognized that although the federal rules of criminal procedure requires the defendant's presence at every stage of the trial, this error can be harmless. The Court found, however, that the trial court committed reversible error by indicating to the jury that it would accept a guilty verdict "with extreme mercy," rather than admonishing it that the recommendation would not be binding and that the jury had no sentencing function. *Id*. at 39-40. Here, no such question was asked, and the trial court made no statement to the jury concerning leniency.

Petitioner also cites *United States v. Neff*, 10 F.3d 1321, 1324-25 (7th Cir. 1993), a case in which the Seventh Circuit held that a trial court violates a defendant's constitutional rights by answering the jury questions with facts not in evidence. This did not occur in Petitioner's case. Even assuming that defense counsel was not consulted about any of the notes that were received from the jury, the trial court instructed the jury that it had received all of the law and evidence that it was going to receive. Even assuming the trial court had testimony re-read to the jury, but not in open court on the record, the Fifth Circuit has held that it is harmless error to send exhibits to the jury without consulting counsel. *See United States v. Hagmann*, 950 F.2d 175, 179-80 (5th Cir. 1992). It has also held that habeas corpus relief is not warranted when bench conferences are not recorded unless a petitioner can demonstrate prejudice. *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998). Petitioner has alleged no prejudice from any failure to record the conferences about the jury's questions or the responses to the jury questions. The jury was advised properly about state law and advised to continue deliberations. Petitioner's first ground for relief is without merit and should be denied.

11

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his fourth ground for relief, Petitioner claims that his trial counsel was ineffective during plea bargain negotiations. He asserts that "counsel failed to allow the petitioner to make the final decision on a plea offer from the State or inform him that it was in his best interest to take said offer/petitioner was willing to accept the States [sic] offer of five (5) years on the alleged offense." (Pet. at 7). The Court of Criminal Appeals denied this claim on its merits. This was not an unreasonable application of federal law.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability suffi-

cient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

Petitioner does not elaborate on this ground for relief beyond the conclusory statement he made. His state habeas application asserted that "[c]ounsel failed to allow applicant the chance to make the final decision on a plea bargain offered by the State or inform him of a plea offer. Applicant was willing to accept the States [sic] offer of (5) years T.D.C. for the alleged charge. (S.H.Tr.:8). The supporting memorandum at the state says he was willing to accept a plea bargain offer of ten years and tried to tell the trial court this, but was not permitted to speak. He then asserts that counsel was ineffective in failing to discuss with him the advisability of accepting or rejecting a plea bargain offer, particularly because accepting the offer was in his best interests. (S.H.Tr.:24-25). In the part of the record he cites, the State rested its case, Petitioner stated on the record that he did not wish to testify, he asked to say something, and the trial judge informed him that she did not need to hear anything further from him. Immediately after this, defense counsel asked that Petitioner state on the record that the decision for him not to testify was his. Petitioner was sworn in, defense counsel asked him about his decision not to testify, and Petitioner testified that it was his decision. (R. 3:90-91).

Both the Supreme Court and the Fifth Circuit have held that counsel may be ineffective for failing to advise his or her client of a plea bargain offer before its expires, if the defendant can establish prejudice by demonstrating that it would have been a less severe sentence and that the plea agreement would have been accepted by the trial court. *Missouri v. Frye*, 132 S.Ct. 1399, 1408

13

(2012); *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995). The Supreme Court has further held that under certain circumstances, defense counsel may be ineffective if he advises a client to reject a favorable plea offer and proceed to trial. *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012). On federal habeas review, a petitioner bears the burden of demonstrating that the state court's denial of his claim is contrary to federal law. He must also demonstrate that the decision was contrary to federal law based on the record before that court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Based on the record, Petitioner has not demonstrated that the state court's denial of this claim is contrary to *Strickland*. While he appears to suggest that he was not made aware of a plea offer, he then states, in contradiction, that he would have accepted an offer and attempted to do so. He provides insufficient support for a claim that he was unaware of a plea offer. To the extent that Petitioner attempted to accept an offer, he did so after the State rested its case. He has not presented evidence that the plea offer was still available or that it would have been accepted by the trial court. Finally, Petitioner does not assert that his attorney advised him not to accept a plea offer. He claims that his attorney did not adequately advise him that it would be in his best interests to accept a plea bargain. He alleges that he tried to accept a plea offer in the middle of the trial, but he does not claim that he was willing to accept one before trial. Petitioner has not met his burden of demonstrating, based on the record before the state court, that the state's court decision was contrary to *Strickland* because he has not demonstrated deficiency by counsel in this respect. Petitioner's claim of ineffective assistance of trial counsel is without merit and should be denied.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Finally, in his third ground for relief, Petitioner asserts that his appellate counsel was ineffective when he failed to raise on direct appeal the trial errors and jury misconduct alleged in his federal habeas petition. (Pet. at 7). The Court of Criminal Appeals denied this claim on its

14

merits. This was not an unreasonable application of federal law.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner's claims of trial error and jury misconduct are without merit. He has therefore not demonstrated any deficiency by appellate counsel because he has alleged no meritorious claim that was not raised on direct appeal. Petitioner's third ground for relief is without merit and should be denied.

## VII. EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state

15

court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 23rd day of June, 2014.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE